WILLIAM CASWELL, Respondent, *v.* NATHANIEL D. PUTNAM et al., Appellants.

Where a broker has purchased shares of stock for a customer on a margin, he may take title in his own name and is not bound to keep the shares purchased separate from other stock of the same kind owned by him; he fulfills his duty if he keeps in his possession ready for delivery to, or subject to the orders of his principal, an amount of the stock equal to that purchased.

Defendants, who were stock brokers, on July 23, 1883, purchased for $9,300, on an order from plaintiff, given through one M., who was their agent, 100 shares of certain stock upon a margin. On July 31, M., without plaintiff's knwledge or consent, but in his name, ordered a sale of 100 shares of the same stock, which defendants made in good faith for $9,425. M. thereafter gave defendants numerous orders for the purchase and sale of stocks in plaintiff's name, without his knowledge or consent, which were executed in good faith. On December 17, 1883, plaintiff ordered a sale of the stock, which was made for $7,375. Thereafter plaintiff, hearing of the unauthorized sales and purchases, claimed the right to adopt the sale of July 31, and brought this action to recover the balance arising thereunder. Defendants offered to prove on the trial that they had on hand or under their control at all times from July 23, to December 17, 1883, a sufficient amount of said stock to meet a demand by plaintiff for the stock purchased for him over and above the amount necessary to meet rightful demands of all other customers. This was objected to and excluded. *Held,* error.

*Strong* v. *N. M. B. Assn.* (45 N. Y. 718), distinguished.

*Caswell* v. *Putnam* (41 Hun, 521), reversed.

(Argued March 3, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 20, 1886, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Wager Swayne* for appellants. Defendants should have been allowed to prove that they had on hand, or under their control, at all times from July 23, 1883, to December 17, 1883, a sufficient amount of Union Pacific stock to meet a demand by the plaintiff for the amount of stock which the plaintiff had left with the defendants to be carried by them for his account, over and above the amount necessary to meet rightful demands of all other customers. (*Taussig* v. *Hart,* 58 N. Y. 429; *Stewart* v. *Drake,* 46 id. 449, 453; *Nourse* v. *Prime,* 4 Johns. Ch. 490; 7 id. 69; *Horton* v. *Morgan,* 19 N. Y. 170; *Levy* v. *Loeb,* 85 id. 365, 370; Bigelow on Estoppel [3d ed.] 549; Greenl. on Ev. § 212; Cooley on Torts, 449; *Borroughs* v. *Bayne,* 5 H. & N. 296, 302; *Irish* v. *Cloyes,* 8 Vt. 30, 31.)

*Thomas Thacher* for respondent. By the sale of July thirty-first the plaintiff's stock was changed into money; the money stood in the place of the stock, and he has the right, therefore, to claim it as his. (*Harpending* v. *Shoemaker*, 37 Barb. 270; *Neat* v. *Harding*, 20 L. J. Exch. [N. S.] 250.) Where one having possession of the property of another wrongfully sells it, the owner, when he learns of the fact, has his election to repudiate the sale and claim damages, or to accept the sale and demand the proceeds. (*Strong* v. *N. Bank*, 45 N. Y. 718; *Taussig* v. *Hart*, 58 id. 425; 49 id. 301; *Comstock* v. *Hier*, 73 id. 269; *McGoldrick* v. *Willits*, 52 id. 612; *Harpending* v. *Shoemaker*, 37 Barb. 270; *Sturtevant* v. *Waterbury*, 2 Hall, 449; *Hinds* v. *Tweddle*, 7 How. Pr. 278; *McKnight* v. *Dunlap*, 4 Barb. 36; *Wigant* v. *Sickel*, 3 Keyes, 120; *Roth* v. *Palmer*, 27 Barb. 652; *Abbott* v. *Blossom*, 66 id. 353; *Lamine* v. *Dorrell*, 2 L. Raym. 1216; *Langton* v. *Waite*, L. R. [6 Eq.] 165; Story on Agency, § 250; *Manning* v. *Keenan*, 73 N. Y. 45.) The good faith of the defendants, the fact that they were misled in believing that they were authorized to sell, does not deprive the plaintiff of the right which he claims. (*Comstock* v. *Hier*, 73 N. Y. 269; Story on Agency, § 192; *Conkey* v. *Bond*, 36 N. Y. 427.) The exclusion of testimony as to holdings of similar stock not for plaintiff's account, was not error. (*Taussig* v. *Hart*, 58 N. Y. 429; *Horton* v. *Morgan*, 19 id. 173; *Stewart* v. *Drake*, 46 id. 453; Lowell on Transfer, § 5.)

· Haight, J. This action was brought to recover the balance alleged to be due and owing from the defendants, who were stock brokers in the city of New York. The plaintiff resided in the city of Hartford, and on the 23d of July, 1883, engaged the defendants in New York to buy 100 shares of Union Pacific stock, and paid thereon the sum of $1,000. The stock was purchased by the defendants in their own name for the sum of $9,300, and subsequently and on the seventeenth day of December of the same year the plaintiff ordered a sale of the stock, and the same was made for the sum of $7,375.

The orders of the plaintiff were given through one Morgan, who lived in the city of Hartford, and was acting for the defendants as their agent. Subsequent to the purchase, and on the thirty-first of July thereafter, Morgan, without the knowledge or consent of the plaintiff, in his name ordered a sale of 100 shares of Union Pacific stock, which was made by the defendants for the sum of $9,425, in good faith and under the supposition that the order came from the plaintiff, and thereafter numerous other orders for the purchase and sale of stocks were made by Morgan in the name of the plaintiff, without his knowledge or consent, which were executed by the defendants in good faith, supposing that they were ordered by the plaintiff. Subsequently, and in the month of March, 1884, the plaintiff learned of the sales and purchases made in his name by the false and fraudulent orders of Morgan, and then claimed the right to adopt the sale made on the 31st of July, 1883, and claimed the proceeds thereof. It is for the balance arising under this sale that this action was brought.

Upon the trial the defendants offered to prove that they had on hand or under their control at all times, from the 23d of July, 1883, to the seventeenth of December thereafter, a sufficient amount of Union Pacific stock to meet a demand by the plaintiff for the amount of stock which the plaintiff supposed the defendants to be carrying for his account over and above the amount necessary to meet rightful demands of all other customers. This testimony was objected to by the plaintiff as irrelevant and immaterial. The objection was sustained and exception was taken by the defendants.

The learned General Term was of the opinion that the sale of stock was made on the 31st of July, 1883, by the defendants was in judgment of law a conversion of the plaintiff's stock; that it was turned into money, and that the plaintiff in consequence had an election of remedies; that he could either bring an action for the conversion or for the proceeds of the stock as so much money had and received by the defendants for his use. It is not our purpose to question the correctness of the rule as stated by the General Term, if there had been

an actual conversion. It will be observed, however, that the defendants had executed each of the genuine orders of the plaintiff, and that they had not neglected or refused to comply with any demand made for the delivery of the stock or of the sale thereof, as was the case in *Strong* v. *N. M. B. Assn.* (45 N. Y. 718). The plaintiff had not ordered the purchase of any specific shares of stock, that which had been purchased was taken by the defendants in their own names for and on account of the plaintiff, who had the right to have it delivered to him upon his paying the balance of the purchase-price. He had delivered to the defendants $1,000, to be held as a margin, and, as the stock declined, subsequently advanced another $1,000, to be held also as a margin. The defendants, under the arrangement, undertook to hold 100 shares of the stock, subject to his order, and this agreement was fully performed on their part, if at all times during the transaction they held on hand that amount of the Union Pacific Railroad Company stock, with which they could and did comply with any orders which he should or did make in reference thereto. One share of stock is not different in kind or value from every other share of the same issue and company. They are unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon or harness. The stock has no ear-mark which distinguishes one share from another, so as to give it any additional value or importance; like grain of a uniform quality, one bushel is of the same kind and value as another. This doctrine appears to be well sustained by authority. In the case of *Horton* v. *Morgan* (19 N. Y. 170), it was held that where the broker is to advance a portion of the purchase-money upon the security of the stock purchased, he may properly take title in his own name, and in such case he is not bound to keep it separate from other stock of the same kind owned by him, but fulfills his duty if he keeps in his possession, ready to deliver to his principal on demand, an amount of stock equal to that purchased by him. In the case of *Stewart* v. *Drake* (46 N. Y. 449-453), ALLEN, J., in delivering the opinion of the court,

says that the duty of the brokers was fully performed " if they at all times had stock on hand to meet the demand of the plaintiff when called upon or when required by the exigencies of the dealings between the parties. The stock purchased for the plaintiff had no ear-mark, and one share being of equal value with every other share of the same stock, the defendants were not bound to deliver or have on hand for delivery any particular shares or the identical shares purchased for the plaintiff." (See also, *Taussig* v. *Hart*, 58 N. Y. 425 ; *Levy* v. *Loeb*, 85 id. 365 ; *Nourse* v. *Prime*, 4 Johns. Ch. 490 ; 7 id. 69.)

It consequently appears to us that the testimony excluded was material, and that if the defendants had established as facts the matter embraced in the offer it would have shown a performance of the agreement on their part notwithstanding the fraudulent order of Morgan, and that there was no conversion of the plaintiff's stock.

It is urged that the defendants intended to sell the plaintiff's stock, and that their intention is controlling upon the question of conversion. Their good faith, however, as well as their ignorance of the false order of Morgan, is conceded, and it consequently follows that they only intended to sell the stock of the plaintiff that was ordered by him to be sold.

Again, the plaintiff was not injured by the false and forged orders of Morgan. The defendants purchased the stock for him, and sold it as he directed, and his condition or position is not changed from that which would have existed if the forged orders had not been made. The defendants having been imposed upon by their agent Morgan, must suffer the losses resulting from their action under his false orders. The plaintiff suffered nothing in consequence thereof, and, consequently, can recover nothing unless he can show a wrongful conversion of his property. Failing in this, he would have no right of action.

For the reasons stated, the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.