[Civil No. 1150.   Filed April 2, 1910.]

[108 Pac. 486.]

SHANNON COPPER COMPANY, a Corporation, Defendant and Appellant, v. DELL M. POTTER, Plaintiff and Appellee.

1. CORPORATIONS—SALE OF STOCK—CONTRACTS—CONSTRUCTION—RIGHTS OF SELLERS.—A contract of sale of corporate stock, which recites that the corporation and an individual are parties of the first part, and which provides that the parties of the first part agree to sell the stock of the corporation, and that the buyer agrees to pay therefor a specified sum at specified times, with semi-annual interest, etc., executed when the individual was the legal owner of most

of the stock of the corporation, and the equitable owner of the remainder, shows that the rights of the corporation and the individual are several and not joint.

2. EVIDENCE—PAROL EVIDENCE — CONTRACTS—AMBIGUITY.—The patent ambiguity of a written contract which cannot be explained by parol is that which remains uncertain after the court has received evidence of the surrounding circumstances throwing light on the intent of the parties, and where the court, after placing itself in the situation of the parties at the executing of the instrument, and with full understanding of the words, cannot ascertain the intent of the parties from the language of the instrument, it cannot be sustained by the introduction of evidence adding new terms.

3. SAME—SAME—SAME—SAME.—Where a contract of sale of corporate stock recited that the corporation and an individual were parties of the first part, and provided that the parties of the first part agreed to sell the stock of the corporation, and that the buyer agreed to buy at a specified price, and that the first partial payment should be made to a specified bank, and that the balance should be paid in installments at the same bank, but was silent as to whom payment of the semi-annual interest provided for should be made, parol evidence of the situation of the parties at the execution of the contract showing that the individual was the legal owner of most of the stock and the equitable owner of the remainder, and that the bank, with the knowledge of the buyer, applied the money received from the buyer to the personal use of the individual, was admissible to explain the ambiguity resulting from the failure to provide to whom payment of the interest should be made, and showed that the individual was entitled to the interest.

4. SAME—CONSTRUCTION — LIBERAL CONSTRUCTION.—A seller in a contract of sale reduced to writing by a stenographer of the buyer is entitled to a favorable construction of the contract, under the rule that one who takes an agreement prepared by another and on its faith incurs obligations, or parts with his property, should have a construction given to the instrument favorable to him.

5. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.—Where a cause was tried by the court without a jury, the error in admitting incompetent evidence was not reversible because the court on appeal will presume that the trial court ignored such evidence.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for Graham County. E. W. Lewis, Judge. Affirmed.

A written contract was entered into in which the Clifton Northern Railroad Company, a corporation, and Dell M. Potter were recited to be the parties of the first part, and Shannon Copper Company the party of the second part. By

the terms of the contract, among other matters, the party of the first part agreed to sell the Shannon Copper Company fifty-one per cent of the capital stock of the railroad company, the entire capitalization being $50,000, divided into 500 shares of the par value of $100 each. And the Shannon Copper Company agreed to pay therefor the sum of $10,000 in specified installments, through a specified bank. A further provision of the contract is as follows: "And the party of the second part, for and in consideration of the faithful performance of the covenants herein contained by the parties of the first part, hereby agrees to pay an amount equal to ten per cent (10%) per annum from January 1, 1909, on the capital stock of the aforementioned Clifton Northern Railroad Company, i. e., five thousand dollars ($5,000.00) per annum, for a period of ten (10) years; such interest to be paid semi-annually." The $10,000 was paid and received by Potter, and the fifty-one per cent of the capital stock of the railroad company delivered to the copper company. The first two semi-annual interest charges were paid into the treasury of the railroad company, instead of to Potter, and were expended in betterments and maintenance of the road.

Potter brought suit against the corporations, alleging among other things: "That in fact the words 'parties of the first part' are frequently used in said contract where they refer to and mean plaintiff only; that the said contract recites 'that the parties of the first part are owners of the majority of the capital stock of the Clifton Northern Railroad Company,' whereas, in truth, as was well known prior to and at the time of the execution of the said contract to all the parties thereto and was intended by them to be expressed therein, the plaintiff was then the legal owner of all but four shares of the capital stock of the Clifton Northern Railroad Company, to wit, of 496 shares thereof, and was the equitable owner of the remaining four shares thereof, while the Clifton Northern Railroad Company was not the owner, legal or equitable, of any of the capital stock of the said company; that the said contract recites 'that the said parties of the first part hereby agree to sell, assign and transfer to the said party of the second part, fifty-one per cent (51%) of the capital stock of the said Clifton Northern Railroad Company, whereas, in truth, that was the agreement only of the plaintiff,

as was then and theretofore well known to all the parties to·
the said contract"—and recovered judgment for the amount
of the said interest installments so paid into the treasury of
the railroad company, this appeal being from such judgment.

M. J. Egan and Ben Goodrich, for Appellant.

The terms of the contract are fully set out in the com-
plaint, and the court erred in admitting parol testimony which
contradicted, varied, altered and added to the contract. The
intention of the contracting parties is to control, and this
must be deduced from the entire agreement, and from all its
provisions considered together. It must be considered as a
whole so as to give effect, if possible, to all parts of it.
*Far West Oil Co.* v. *Witmer Bros.,* 143 Cal. 306, 77 Pac. 61;
*Stockton S. & L. Co.* v. *Purvis,* 112 Cal. 236, 53 Am. St. Rep.
210, 44 Pac. 561; *Mickle* v. *Sanchez,* 1 Cal. 200; *Wilson* v.
*Alcatraz Asphalt Co.,* 142 Cal. 182, 75 Pac. 787; *O'Brien* v.
*Miller,* 168 U. S. 287, 18 Sup. Ct. 140, 42 L. Ed. 469. The
object of construction is to ascertain, if possible, the intention
of the parties from the language used in the contract.
*Racouillat* v. *Sansevain,* 32 Cal. 377. And parol testimony
is inadmissible to alter the operation of the instrument by
evidence of intention not expressed in the instrument. *Van
Slyke* v. *Broadway Ins. Co.,* 115 Cal. 644, 47 Pac. 689, 928;
*San Jose Savings Bank* v. *Stone,* 59 Cal. 183. Where no
omission or mistake in writing, parol is not competent.
*Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469, 26
Pac. 830.

Frederick S. Nave, for Appellee.

Inasmuch as the trial was before the court without a jury,
it will be presumed that the court ignored the improper mat-
ter if any was admitted, and these improvident rulings do
not constitute reversible error. This is true whether the
matter is merely immaterial (*Abernathy* v. *Reynolds,* 8
Ariz. 173, 71 Pac. 914; *Miller* v. *Green,* 3 Ariz. 207, 73 Pac.
399), or entirely incompetent (*California Dev. Co.* v. *Yuma
Val. Co.,* 9 Ariz. 366, 84 Pac. 88; *Seaverns* v. *Costello,* 8
Ariz. 308, 71 Pac. 930; *United States* v. *Marks,* 5 Ariz. 405,
52 Pac. 773; *Boston Co.* v. *Lewis,* 3 Ariz. 5, 20 Pac. 310).
"If the meaning of a writing by itself is affected with un-

certainty, the intention of the parties may be ascertained by extrinsic evidence.'' *Ripon College* v. *Brown,* 66 Minn. 179, 68 N. W. 837. ''Where the language of a written instrument is ambiguous and uncertain, so that it cannot be clearly ascertained therefrom which of two interpretations was intended by the parties, the circumstances surrounding the execution of such instrument should be received in evidence as an aid to the ascertainment of such intent.'' *Brown* v. *Shields,* 78 Kan. 305, 96 Pac. 351. ''Even a patent ambiguity may be explained by parol.'' *Gentile* v. *Crossan,* 7 N. M. 589, 38 Pac. 247; *Powers* v. *World's Fair Mining Co.,* 10 Ariz. 5, 86 Pac. 15; *Clark* v. *Liberty Mining & Smelting Co.,* 11 Ariz. 322, 94 Pac. 1134; *Reed* v. *Merchants' Mut. Ins. Co.,* 5 Otto (U. S.), 23, 24 L. Ed. 348; *Laclede* v. *Moss Tie Co.,* 185 Mo. 25, 84 S. W. 76; *Skaggs* v. *Simpson,* 33 Ky. Law Rep. 410, 110 S. W. 251; *Fearnley* v. *Fearnley,* 44 Colo. 417, 98 Pac. 819; *Westervelt* v. *Mohrenstecher,* 76 Fed. 121, 22 C. C. A. 93, 34 L. R. A. 477; *McKay* v. *Barnett,* 21 Utah, 239, 60 Pac. 1100, 50 L. R. A. 371; *Salmon Falls Mfg. Co.* v. *Goddard,* 14 How. (U. S.) 447, 14 L. Ed. 493; *United States* v. *Peck,* 12 Otto (U. S.), 64, 26 L. Ed. 46. ''Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract.'' *Pressed Steel Car Co.* v. *Eastern Ry. Co.,* 121 Fed. 609, 611, 57 C. C. A. 635. ''A party who takes an agreement prepared by another, and upon its faith . . . parts with his property, should have a construction given to the instrument favorable to him.'' *Noonan* v. *Bradley,* 76 U. S. 394, 407, 19 L. Ed. 757.

DOE, J.—The contract expressly provided that the first payment should be made to a specified bank, and, at the conclusion of the recitals providing for the payment of the several installments to be made before the delivery of the stock, they are expressly required to be made to the same bank,

yet that portion of the contract providing for the payment of the semi-annual interest installments is silent as to whom they shall be paid, and is, to that extent, ambiguous.

Assuming the correctness of the finding of the lower court that at the time of the execution of the contract Potter was the legal owner of most of the stock of the railroad company and the equitable owner of the remainder, the recital in the contract "that the parties of the first part were the owners of a majority of the stock of the railroad company" is only a partial truth. Although Potter and the railroad company are recited to be "the parties of the first part," it by no means follows that their liability or interest is joint. *Consolidated Canal Co.* v. *Peters*, 5 Ariz. 80, 46 Pac. 74; *Berry Harvester Co.* v. *Wood M. & R. Mach. Co.*, 152 N. Y. 540, 46 N. E. 952; *Goldsmith* v. *Sachs* (C. C.), 17 Fed. 728, 8 Saw. 110. In the light of the surrounding circumstances as disclosed by the evidence, we think the interest of the parties of the first part was several rather than joint.

The rule, as stated by Lord Bacon, that parol evidence is inadmissible to explain a patent ambiguity, has generally been thought too broad, and, even where followed, has usually been limited in its application. The rule is, we think, correctly stated as follows: "The true rule with regard to patent ambiguities must be taken to be this: The patent ambiguity which cannot be explained by parol evidence is that which remains uncertain after the court has received evidence of the surrounding circumstances and collateral facts which are of such a nature as to throw light upon the intention of the parties. In other words, and more generally speaking, if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty, and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing." 17 Cyc. 682, and see authorities there cited. There are many cases which entirely ignore the distinction and hold that a patent as well as a latent ambiguity may be

explained by parol evidence.   *Jenny Lind Co.* v. *Bower,* 11 Cal. 199; *Ripon College* v. *Brown,* 66 Minn. 179, 68 N. W. 837; *Osborne* v. *Stringham,* 1 S. D. 406, 47 N. W. 408; *Conservative Realty Co.* v. *St. L. Brewers' Assn.,* 133 Mo. App. 261, 113 S. W. 231; *Meyers* v. *Maverick* (Tex. Civ. App.), 28 S. W. 716; *Gentile* v. *Crossan,* 7 N. M. 589, 38 Pac. 247.   We think it entirely immaterial whether the ambiguity in the contract under consideration be patent or latent, as by the aid of extrinsic evidence the true intent of the parties can and has been made to clearly appear.

It is urged that the evidence does not sustain the findings and judgment of the lower court.   While the parties met and agreed upon the terms of the contract, the phraseology in which it was expressed was left to a stenographer in the employ of the copper company.   Under such conditions Potter is entitled to a favorable construction of the contract.   "A party, who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him." *Noonan* v. *Bradley,* 76 U. S. 394, 19 L. Ed. 757.

It seems apparent from the evidence that Potter received the money paid through the bank and applied the same to his personal use, and that this must have been known to and expected by the copper company, and this practical construction of the contract by the parties is entitled to great weight as tending to throw light upon the intention of the parties as to who should receive the remaining payments.   *Powers* v. *World's Fair M. Co.,* 10 Ariz. 6, 86 Pac. 15.

It seems clear that the semi-annual payments were a part, and the principal part, of the consideration for the sale of the railroad stock, and, as all the stock sold to the copper company was the sole property of Potter, we can only conclude that it was the intention of the parties that such payments should go to the stockholders in proportion to their several holdings.

No suggestion is made that proper evidence was excluded, and, if any immaterial or incompetent evidence was admitted, it will be presumed in this court, the case having been tried below before the court without a jury, that the court ignored such improper evidence.   *Abernathy* v. *Reynolds,* 8 Ariz. 173, 71 Pac. 914; *Miller* v. *Green,* 3 Ariz. 207, 73 Pac. 399; *California Development Co.* v. *Yuma Valley Co.,* 9 Ariz. 366, 84 Pac. 88; *Seaverns* v. *Costello,* 8 Ariz. 308, 71 Pac. 930;

*United States* v. *Marks,* 5 Ariz. 405, 52 Pac. 773; *Boston Co.* v. *Lewis,* 3 Ariz. 5, 20 Pac. 310.

No error appearing in the record, the judgment is affirmed.

KENT, C. J., and DOAN and CAMPBELL, JJ., concur.